**SIGNED THIS: November 01, 2007**

_____
**MARY P. GORMAN**
**UNITED STATES BANKRUPTCY JUDGE**
_____

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| In Re ) | |
| ) | In Bankruptcy |
| LESTER K. WESTFALL, ) | |
| ) | Case No. 05-75961 |
| Debtor. ) | |
| _____ ) | |
| ) | |
| TRUSTEES OF THE OPERATING ) | |
| ENGINEERS LOCAL #965 ) | |
| HEALTH BENEFIT PLAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Adversary No. 06-7033 |
| ) | |
| LESTER K. WESTFALL, ) | |
| ) | |
| Defendant. ) | |

# **O P I N I O N**

The issue before the Court is whether a non-dischargeable judgment should be entered against the Debtor/Defendant, Lester

Westfall, and in favor of the Plaintiff, Trustees of the Operating Engineers Local #965 Health Benefit Plan ("Plan") for reimbursement of medical benefits paid on behalf of the Debtor's ex-wife by the Plan.  After considering the testimony of the parties and the arguments of counsel, the Court finds that the Debtor fraudulently failed to inform the Plan of his divorce and the resulting ineligibility of his ex-wife to receive Plan benefits. Accordingly, the non-dischargeable judgment requested by the Plan will be entered.

The Debtor was a member of Operating Engineers Local No. 965 for 44 years.  One of the benefits of his union membership was participation in the Plan.  The Plan also provided medical benefit coverage for the Debtor's "legal spouse" and dependents.

The Plan imposes an affirmative duty on participants to notify the Plan within 60 days of a divorce.  The Debtor admits that he received copies of the Plan documents which clearly advised him of this duty. Nevertheless, when the Debtor and Ann Westfall divorced in October, 1991, the Debtor did not notify the Plan of the divorce.  Instead, he testified that he called the union hall and told the union business manager about the divorce.  The Debtor did not produce any evidence to corroborate this call, and there was no evidence that the union ever notified the Plan of the Westfalls' divorce.  The Debtor stated that he had followed the same practice of notifying the union when three of his four prior marriages ended

in divorce, but there was also no evidence as to the time of those divorces or the notification requirements of the insurance plans in effect when those divorces occurred.

Between October, 1991, and September, 2005, 277 claims totaling $57,392.31 were paid by the Plan for medical services provided to Ann Westfall.  Written explanations of benefits for each of the claims were sent to the Plan participant, Lester Westfall.  Each explanation of benefits clearly identified Ann Westfall as the patient.  In addition, included with some of the explanations were checks for reimbursement of expenses paid directly by Ann Westfall.  Each check was made out to Lester Westfall as the Plan participant rather than to Ann Westfall as the patient.  Every check was cashed and each check purported to contain the endorsement of the Debtor.

Although they divorced in 1991, the Debtor and Ann Westfall continued to live in the same house for another seven or eight years.  The Debtor testified that, after they stopped living together, he brought the insurance mail over to Ann's house for her to open.  They are not living together at the present time, but Ann Westfall's mail comes to the Debtor's house and he forwards it to her at her temporary location in California.

Ann Westfall filed a Chapter 7 petition on October 7, 2005. The Plan filed a dischargeability complaint against Ann Westfall for fraudulently obtaining health insurance benefits, and a default

judgment in the amount of $57,392.31 was previously entered against her.

Lester Westfall also filed a petition pursuant to Chapter 7 of the Bankruptcy Code on October 7, 2005. The Plan filed an adversary complaint pursuant to 11 U.S.C. §523(a)(2)(A) alleging that the Debtor fraudulently concealed his divorce from Ann Westfall in order to obtain medical benefit payments for Ann which she was not entitled to receive. The Plan alleges that the Debtor's silence regarding his divorce from Ann constitutes a false representation that he was still married to Ann. The Plan alleges that it would have terminated Ann Westfall's insurance coverage if it had known about the divorce. The Debtor alleges that he notified the Plan by calling a union official and that he was unaware that Ann Westfall continued to receive health insurance benefits for 14 years after their divorce. The Plan seeks a judgment for the $57,392.31 it paid on behalf of Ann Westfall after the divorce and a determination that the judgment is non-dischargeable.

This Court must determine the existence of an underlying debt before reaching the dischargeability issues. In the absence of a prior state or federal judgment fixing an amount due, this Court has authority to hear the issues of liability and damages and to enter a money judgment if it finds in favor of a plaintiff on the required issues. In re Hallahan, 936 F.2d 1496, 1508 (7th Cir.

1991); In re Scott, 2006 WL 126757 *3 (Bankr N.D. Ill.).

The Debtor did not dispute that his ex-wife was ineligible for the benefits she received after their divorce, and he did not argue that he has no liability to reimburse the Plan for those benefits pursuant to the Plan documents.  Further, he did not contest the amount of benefits paid by the Plan for Ann Westfall after the divorce.  His defense was limited to contesting whether his conduct was such that his debt to the Plan should be determined to be non-dischargeable.  This Court finds that the Debtor is liable to the Plan in the amount of $57,392.31, and that a judgment should be entered accordingly.

The Plan relies on §523(a)(2)(A) of the Bankruptcy Code for its allegations of non-dischargeability.  Section 523(a)(2)(A) provides, in part, as follows:

> (a)  A discharge under section 727. . . of this title does not discharge an individual debtor from any debt –
>
> (2)  for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by –
>
> (A)  false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition(.)

11 U.S.C. §523(a)(2)(A).

In order to prove a case under this provision, courts have traditionally required a plaintiff to prove that (i) the debtor

-5-

made false statements which he knew to be false, or which were made with such reckless disregard for the truth as to constitute willful misrepresentations; (ii) the debtor possessed the requisite *scienter*, i.e. he actually intended to deceive the plaintiff, and (iii) to its detriment, the plaintiff justifiably relied on the representations. Field v. Mans, 516 U.S. 59, 74-75, 116 S.Ct. 437, 446 (1995); In re Mayer, 51 F.3d 670, 673 (7th Cir. 1995), *cert. denied* 116 S.Ct. 563 (1995); In re Sheridan, 57 F.3d 627, 635 (7th Cir. 1995); In re Scarlata, 979 F.2d 521, 525 (7th Cir. 1992). A plaintiff bears the burden of proof and must prove each element by a preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 286-87 (1991). Exceptions to discharge are to be construed strictly against a creditor and liberally in favor of a debtor. Scarlata, 979 F.2d *at* 524.

In the case at bar, the status of Debtor's marriage to Ann Westfall was a material fact in determining whether Ann was entitled to coverage under the Debtor's health insurance. The Plan does not allege that the Debtor made a false statement about his marital status. Instead, the Plan alleges that the Debtor's silence about his divorce constitutes a false representation.

A debtor's silence regarding a material fact can constitute a false representation under §523(a)(2)(A). *See* 4 *COLLIER ON BANKRUPTCY* ¶ 523.08[1][d] (Alan N. Resnick & Henry J. Sommer, 15th ed. rev.); In re Van Horne, 823 F.2d 1285, 1288 (8th Cir. 1987);

-6-

In re Weinstein, 31 B.R. 804, 809 (Bankr. E.D. N.Y. 1983).  For example, a welfare recipient's failure to inform a welfare agency of new employment while continuing to accept benefits constitutes a false representation that the recipient remains unemployed and eligible for benefits.  In re Hatcher, 111 B.R. 696, 700 (Bankr. N.D. Ill. 1990); In re Jones, 37 B.R. 195, 196 (Bankr. E.D. Mo. 1984).  Similarly, a debtor who knew that her ex-husband's child support obligation would terminate if their child was adopted by her current husband made a false representation for purposes of §523(a)(2)(A) when she failed to notify her ex-husband of the child's adoption and continued to cash his child support checks.  In re Overall, 248 B.R. 146, 151 (Bankr. W.D. Mo. 2000).

In this case, the Debtor had an affirmative duty to inform the Plan within 60 days of his divorce.  The Debtor knew that an ex-wife was not eligible to receive Plan benefits, and his concealment of his divorce allowed Ann to continue to receive health benefits.  The Debtor's failure to tell the Plan about his divorce was a clear misrepresentation by omission.

The Debtor's testimony that he told the union about his divorce was not convincing.  He could not provide any details such as the name of the person he talked to at the union or the date and time of the call.  Moreover, he admitted that he knew that it was not the union's responsibility to inform the Plan of changes in the marital status of its members.  It was the Debtor's responsibility

to notify the Plan of his divorce, and he failed to do so.

The Debtor was not a credible witness. His testimony was vague, evasive, and contradictory. His testimony that he went 14 years without opening mail from the Plan which was addressed to him and sent to his house defied belief. His explanation that he thought all of the mail from the Plan related to his son was undercut by the fact that his son's insurance coverage terminated in 2002 when his son dropped out of college, but the Plan mail kept coming through 2005. The Debtor also admitted opening at least one envelope from the Plan which he claimed contained two identification cards - one for him and one for his dependents.

It is not enough for the Plan to simply show that the Debtor made a false representation. The Plan must also show that the Debtor actually intended to deceive the Plan. "Proof of intent to deceive is measured by the debtor's subjective intention at the time the representation was made." In re Monroe, 304 B.R. 349, 356 (Bankr. N.D. Ill. 2004). Where a debtor knowingly or recklessly makes false representations which the debtor knows or should know will induce another to act, an intent to deceive may be inferred. Sheridan, 57 F.3d *at* 633; In re Jairath, 259 B.R. 308, 315 (Bankr. N.D. Ill. 2001).

The Plan proved that the Debtor subjectively intended to deceive the Plan by failing to notify the Plan of his divorce from Ann Westfall and by continuing to allow her to accept benefits from

the Plan.  The Debtor knew exactly what was going on with Ann and the medical benefits she was receiving from the Plan.  As noted above, the Debtor was not credible when he denied opening and receiving the 277 claim explanations mailed to him.  These documents clearly identified Ann as the patient, and some of them included checks made out to the Debtor.  The Debtor's testimony regarding the checks was vague and contradictory.  He admitted receiving checks with his name on them, but later said that he did not recall receiving checks from the Plan.  He denied endorsing checks from the Plan, but also stated that, if he did sign the checks, he did not remember doing so.  He admitted that he knew Ann was cashing the checks, but was unclear as to whether she was endorsing the checks with his permission.  He identified his own signature on one of the checks, but later expressed uncertainty as to whether the signature was really his.

Despite their divorce in 1991, the Debtor has remained very close to Ann Westfall.  The Debtor and Ann obviously worked on their bankruptcy filings together.  Although they filed separate petitions, it cannot be a coincidence that they filed petitions on the same day using the same lawyer.  It is clear that the Debtor was working in concert with Ann to intentionally defraud the Plan.

Reliance on a false pretense or false representation under §523(a)(2)(A) must be "justifiable".  Field v. Mans, 516 U.S. *at* 74-75.  Justifiable reliance is an intermediate level of reliance;

it is less than reasonable reliance, but more than reliance in fact.  Id.  Whether a party justifiably relies on a misrepresentation is determined by looking at the circumstances of a particular case and the characteristics of a particular plaintiff, not by an objective standard.  Id.  To satisfy the reliance element of §523(a)(2)(A), the creditor must show that the debtor made a material misrepresentation that was the cause-in-fact of the debt that the creditor wants excepted from discharge. Mayer, 51 F.3d *at* 676.

In this case, the Plan did not have actual knowledge of the divorce.  It was not the Plan's duty to monitor the marital status of its participants.  Because such a duty would not have been feasible for the Plan, the burden was placed on the Plan participants to inform the Plan of any change in marital status. This responsibility was clearly conveyed to the Plan participants, and the Debtor understood his obligation under the Plan.  The Plan was not remiss in failing to discover the divorce.

Moreover, the Plan did not have any reason to suspect that the Debtor and Ann Westfall were divorced.  The Debtor and Ann continued to live together after the divorce, and the Plan mail regarding Ann's medical benefits continued to go to the Debtor's address even after they stopped living together.  In addition, Ann kept the Westfall surname after the divorce.  There were no red flags to alert the Plan about the divorce.

Under these circumstances, the Plan justifiably relied on the Debtor's silence as to his divorce from Ann.  The Plan would not have expended $57,392.31 in medical benefit payments on Ann if it had been properly notified of the divorce of the Debtor and Ann.

For the foregoing reasons, Lester Westfall's debt of $57,392.31 to the Trustees of the Operating Engineers Local No. 965 Health Benefit Plan will be determined to be nondischargeable pursuant to 11 U.S.C. §523(a)(2)(A).

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

###